E-FILED
Wednesday, 22 July, 2020 11:04:50 AM
Clerk, U.S. District Court, ILCD

State of Illinois

In The Circuit Court of The Eighth 8th Judicial Circuit
Schuyler County, Law Division

FILED
DEC 28 2019
CLERK OF THE CIRCUIT COURT
EIGHTH JUDICIAL CIRCUIT
SCHUYLER COUNTY, ILLINOIS

Jermaine J. Carpenter
    Plaintiff          COPY

§ 1983- Complaint

CIVIL No. 2019-L-6

vs.

J. B. Pritzker- Illinois Govenor; Sharon Coleman- Program Administrator; Gregg Scott- facility Director; Ajay Jetwani- Bycologist; Eric Hunkell- Assistant facility Director; Cynthia Daugherty staff; James McCurry- Security Director; Shan Jumper - Clinical Director; Sharlene Caraway- Assistant Clinical Director; Wanda Pennock, Amy Clark, Curtis Parsons, Diane Owens, Sandra Hays, Karen Smith, and Dora Lucas- Security Therapy Aide IV; J. R. Reid, G. Carreon, Paula Lodge, Diane Dobier, Judith Roth, and Lindsey Wagner - Therapist; Gary Kulhan, and Daniel Spencer- Security Therapy Aide II or Acting Security Therapy Aide II's at all times relevant to this complaint; Travis Smith; Camerer- Security Therapy Aide I; individually and in their official capacity,

                            Defendant(s)

I. Jurisdiction And Venue

1). This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the constitution of the United States. The court has jurisdiction under 28 U.S.C Section 1331 and 1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunction relief are authorized by

2). The Central District of Illinois is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to the claim occured.

## II. Introduction

At all times relevant to this complaint, the plaintiff was an involuntarily committed detainee who's civilly committed pursuant pursuant to §725 ILCS 207/1 and who is also subjected to periodic re-examinations pursuant to §725 ILCS 207/55(a) being held for reasons other than punishment. Because the plaintiff was being held for reasons other than punishment at all times relevant to this complaint he was constitutionally entitled to be treated humanely and to the exercise of proffessional judgment, Youngberg - v - Romeo, 457 U.S. 367, 321 (1982)( a person involuntarily committed is entitled to exercise of proffessional judgment), Sain - v - Wood, 512 f.3d 886, 893 (7th cir, 2008)( committed person is entitled to " humane conditions" " and the provision of " adequate food, clothing, shelter, and medical care ") Quoting farmer - v - Brennan, 511 U.S. 835, 832(1994). The Supreme Court also remarked in Youngberg that " [P]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish 457 U.S. at 322, similar conclusion applies to plaintiff as a pre-trial detainee facing criminal charges and held for reasons other than punishment: See

Seling-v-Young, 531 U.S. 250, 265, 121 S.Ct. 727, 148 L.Ed. 2d 734 (2001) generalizes the proposition this way; " due process requires that the conditions and duration of confinement ... bear some reasonable relation to the purpose for which the persons are committed."

Officials may take necessary steps to impose heightened restrictions on a detainee if the restrictions serve a legitimate purpose other than punishment, Bell-v-Wolfish, 441 U.S. 520, 537 (1979). Here, plaintiff's allegations in this complaint will suggest that 23 months and ongoing prolonged isolation in solitary confinement known as 'Special management' is for the purpose of punishment, retaliation for alleged staff assault, retaliation for past litigation. Plaintiff has been subjected to racist bias and discrimination where he has been treated very differently than a white former resident who was on the same status before going to prison. And finally, the plaintiff been subjected to prison like conditions that are worst than the former conditions of the Supermax Prison Tamms Correctional Center, and that the conditions imposed on plaintiff is "atypical and significant hardship in relation to the ordinary incident of prison life as this prolonged isolation in solitary - confinement has also had a psychological effect on the plaintiff. See; Sandin-v-Connor, 515 U.S. 472, 483-484 (1995); And plaintiff has a liberty interest in avoiding being housed in prolonged isolation in solitary confinement on special management status.           In 2ND 3n

## III. Plaintiff

3). Plaintiff, Jermaine D. Carpenter, is and was at all times mentioned herein a civil detainee under the Sexually Violent persons act § 725 ILCS 207/1 and a pretrial detainee, accused of a crime being held to ensure his presence at trial. See Bell-V-Wolfish, 441 U.S. 520, 536, 99 S.Ct. 1861, 1872-73, 60 L.Ed. 2d 447 (1979) Held in the State of Illinois in Custody of the Illinois Department of Human Services. He is currently confined in the Rushville treatment and Detention facility, in Rushville Illinois.

## IV. Defendant(s)

4). Defendant J.B. Pritzker is the Illinois Governor and has held the mentioned position at all times relevant in this complaint. (This position not defined in rule book.)

5). Defendant Sharon Coleman-Weems is the Program Administrator and has held the mentioned position at all times relevant in this complaint. (This position is not defined in the Rule book).

6). Defendant Gregg Scott is the Program Director, as defined in the Resident Rule book on page 45 of 79 is- The person who directs the TDF Program. This person is also known as the facility Director, defendant Gregg- Scott has held the above position at all times mentioned in this complaint.

7). Defendant Eric Kunkell is the Assistant Program Director as defined in the Resident Rule book on page 45 of 79 is - The person in charge of the maintenance crew, business office, and work and learning program. defendant Eric Kunkell has held the above mentioned position at all times mentioned in this complaint.

8). Defendant Ajay Jetwani is a Psychiatrist as defined in the Resident Rule book on page 44 of 79 is - This person is a mental health doctor. They can prescribe medicine if needed. They participate in the treatment Team. Defendant Ajay Jetwani held the above mentioned position at all times mentioned in this complaint.

9). Defendant Shan Jumper is the Clinical Director as defined in the resident Rule book on page 45 of 79 is - The person who directs the treatment program, supervises the clinical Clinical staff and treatment teams during all times that are relevant to this complaint defendant Shan Jumper was a member of the Behavior Committee also.

Note: Behavior Committee is defined in the Resident Rule book on page 58 of 79. The Behavior Committee is when the TDF staff sees any behavior that looks like prohibited activities or possible violations of facility rules you may be called to appear before the Behavior Committee.                 m. 5 of 3 m

The Behavior Committee is usually made up of:
- The associate Clinical Director or Clinical Director
- A Sta IV
- Your treatment Team Leader or another Team Leader

10). Defendant Sharlene Caraway is the associate Clinical Director as defined in the resident Rule book on pg. 45 of 79 is - The person who assist the Clinical Director with the treatment program and supervises the clinical staff and treatment teams, and serves as a member of the Behavior Committee. Defendant Sharlene Caraway held the above position at all times mentioned in the complaint.

11). Defendant James McCurry is the Security Director as defined in the Resident Rule book on page 45 of 79 is - The person who supervises all Security Staff. The Defendant James McCurry held the above position at all times that are mentioned in the complaint.

12). Defendant(s) Wanda Pennock, Amy Clark, Karen Smith, Cynthia Daugherty, Curtis Parsons, Diane Owens, Dora Lucas, & Sandra Hays are all Sta IV's Security Therapy Aide IV's as defined in the Resident Rule book on page 46 of 79 is - This person supervises Sta I's and Sta II's and acts as shift Commander. In addition this person takes care of day-to-day facility Security. These named defendants

of the Behavior Committee at all times mentioned in
this complaint.

13). Defendant(s) J.R. Reid, G. Garreon, Paula Lodge,
Diane Dobier, Judith Roth, and Lindsey Wagner are all
Team Leaders as defined in the Resident Rule book on
page 46 of 79 is - someone who supervises the Clinical
staff on a team, and who works with Security staff
to organize treatment services on the units, and serves
as a member of the Behavior Committee. The above def-
endant(s) held the above position at all times mentioned
in this complaint.

14). Defendant(s) Gary Kulhan was an Security Therapy & Travis Smith
Aide II  and defendant Daniel Spencer was acting as
a Security Therapy Aide II  Security Therapy Aide II as
defined in the Resident Rule Book ON page 46 of 79 is-
This person supervises Sta I's and residents. Defendant
Spencer and Kulhan did not hold this position at all
times relevant in this complaint.

15). Defendant Camerer is a Security Therapy Aide I as
defined in the resident Rule Book on page 46 of 79 is-
The person who helps residents with daily living needs.
They escort and supervise residents. They maintain unit
Security. Sta's serve as part of the treatment team. Defendant
Camerer held this position at all times mentioned

# V. Statement of facts

16). On January 26, 2018 was placed on Temporary Secure management Status for allegedly assaulting (2) Security Therapy Aide I's, plaintiff was put in a Suicide cell, stripped of all of his clothing, given a suicide smock and a medical device (White medical curtain) was placed in front of the cell to block his view. (Isolate)

Note: Temporary Special management Status is defined in the Resident Rule Book on page 6 of 79 and states:, If there is a risk that you might hurt someone or your self, you will be put on Temporary Special management. This includes threats to the safety and security of the TDF, or if you face criminal or other charges.

17). Immediately upon arriving in the cell the plaintiff began to experience, threats, disrespect, harrassment, racial bias and inhumane treatment from Sta's who worked the fox unit, this inhumane treatment came in the form of refusing to feed the plaintiff when lunch arrived, and ignoring the plaintiff when he complained or tried to complain about it.

18). After continuously being antagonized, provoked and deprived of his food, plaintiff kicked on the door to bring attention to his complaint. At the time plaintiff was kicking on the door, defendant spencer approached the cell and offered plaintiff some medication to calm him down, and plaintiff declined the medication.

8 of 32

and he walked away and threatened that if I didn't take the medication willing that it would given the medication by force, because plaintiff didn't accept the medication it was forced on him by eight stass dress in riot gear know as the ERT Team.

19). Plaintiff was assaulted physically by the stass in riot gear (ERT) Team emergency response team. the forced administration of medication was administered by defendant AJay Jetwani who didn't come to asses plaintiff before ordering forced meds, if he would have came to asses the plaintiff he would have found that plaintiff was in a stripped cell and was not a threat to himself or others and only wanted staff to discontinue depriving him of his food.

20). After the excessive force was committed against the plaintiff by ERT Team members who began to rush in and punch him Plaintiff was left with a swollen eye that turned black, swollen face, swollen arm, and swollen hands that he recieved no medical treatment for an wasn't offered to him.

21). for the alleged incident that the plaintiff was placed on Temporary Special Management status for on January 26, 2018 he made his first appearance at the Behavior Committee on — — January 30, 2018.

22). On January 30, 2018 plaintiff was found guilty for Battery to any Person by defendant(s) Shan Jumper, Wanda Pennock, and Diane Dobier who's decision was that Plaintiff be maintained on Special management status pending resolution of potential criminal charges. although no criminal charges were pending yet in accordance to Title. 59 Ill. Adm. code 299.650 Temporary special management status.

Note: The rule book states on page 7 of 79 that Temporary Special management and special manage-ment status are basically the same status status. And that the Behavior Committee can put a person on another status if they feel there is not a risk that a person might hurt himself or others.

23). The decision to maintain plaintiff on Special management status has been ongoing for the past 2½ months. that the plaintiff has remained in prolonge isolation in solitary confinement. And the decision to do so was decided by defendant(s) Shan Jumper, Cynthia Daugherty, Wanda Pennock, Amy Clark, Curtis Parsons, Diane Owens, Sandra Hays, Karen Smith, and Dora Lucas, Travis Smith, Gary Kulhan, Daniel Spencer, J.C. Reid, Lindsey Wagner, Judith Roth, Paula Lodge, G. Carreon, Diane Dobier and Sharlene Caraway made the decision on various dates and times as Behavior Committee members.

Pg. 10 of 32

24). From January 24, 2018 until around June 2018, the plaintiff was housed in a stripped cell, a cell used for residents who threaten suicide. A medical device (white curtain) was placed in front of the cell the entire time, this curtain was used to isolate, humiliate, and to harrass the plaintiff. The plaintiff was also in this stripped cell for this entire time with only a small amount of legal work, (2) changes of clothes (shorts & T-shirts) an frequently had little to no hygiene items to wash up with or to take a shower. After about (5) months or (6) months in June or July 2018 plaintiff was allowed to have all of his property or atleast the property that wasn't lost stolen or forced to send home.

25). During all times relevant to this complaint the plaintiff has been on 24hr, 23hr, 22hr, or 21hr lockdown on prolonged isolation in solitary confinement known as special management status and it has been effecting him psychologically, Plaintiff has submitted a Behavior Committee statement detailing how this prolonged isolation is effecting him to the Behavior Committee continuously since around June 24, 2019 Plaintiff has also written a letter to defendant(s) J.B. Pritzker, Sharon Coleman, Gregg Scott, James McCurry, and Eric Hunkell about how this prolonged isolation in solitary confinement is affecting him, this plea for help has been ignored by those defendant(s)

27). Plaintiff have also written defendant(s) Gregg Scott, Eric Kunkell, Sharon Coleman, and James McCurry about the racial discrimination that the plaintiff has recieved since being placed on special management status in that plaintiff has and is being treated very differently than a resident who is caucasian by the name of Thomas Horne who was faced with criminal charges. Resident Thomas Horne was allowed yard every week once a week whether he refused or not, he was allowed out all day until 10:45 pm because the behavior committee put him in a different status, he was allowed to order commissary from both inside and outside venders, the staff did not sit in the dayroom with him while he did his dayroom time, he was treated as if he was innocent until proven guilty, he had the spit mask removed from his face, he seen the behavior committee every 2 days, as required for a person on special management status before he was placed on C-status, he was seen by a primary therapist every week, he was allowed to participate in treatment, their was no medical device (curtain) placed in front of the cell where he was at to isolate him or to block his view, etc.

28). The behavior committee defendant(s) were required to give the plaintiff a hearing every 48 hrs to

determine if the person is an immediate risk to hurt himself or others, but after being placed on special management and isolation the plaintiff was not seen every 48hr and have been seen only once per week mostly, because the fail to follow their rules.

29). Although the plaintiff has been allowed to do treatment work in his cell he was not allowed by defendant Gregg Scott to go to group in order to meet the requirements of periodic re-examination pursuant to 725 ILCS 207/55, the plaintiff wasn't allowed to get a job (task) to earn points to get out of debt, participate in any recreational or educational groups; the Blue Team also denied this request.

30). Plaintiff was not allowed to communicate with other residents other than a few residents who were on the wing with him, during his court writs to Cook County plaintiff was placed in a van and seperated from other residents who were on the writ as well and wasn't allowed to talk to them.

31). Sometime during the 22½ months in prolonged isolation in solitary confinement the plaintiff was infected with some kind of skin infection from having to wearing steal waste chains every day during his dayroom time, other than the days he was deprived of his dayroom time.

32). During the 22½ months that the plaintiff has been in prolonged isolation in solitary confinement, he has experience many forms of inhumane and unjust treatment, racial bias and abuse. and have written many grievances about the matter only to be continuously retaliated against for doing so, an deprived of his human rights and liberty, and the therapist has not been consistent in coming to see him as required every week once a week when a person is on special management status, and it constitutes punishment and has had a psychological effect on plaintiff that he has complained about to all of the defendants who have turned a blind eye to the plaintiff being mistreated. The conditions that the plaintiff have been under during his 22½ month prolonged isolation in solitary confinement is worst than the former conditions of the supermax Prison Tamms Correctional Center and constitutes " Atypical and significant hardship in relation to the ordinary incident of prison life and plaintiff has a liberty interest in avoiding continually being housed in prolonged isolation in solitary confinement known as special management.

pg. 14 of 32

33). Plaintiff was found guilty in Schuyler County on October 16, 2019, of aggravated Battery in No. 18-CF-25 an when the plaintiff came back from court defendant Gary Kulhan had moved all of his

cell used for residents on suicide watch, plaintiff's electronics was confiscated, and the 3 hrs dayroom that the plaintiff had was unjustly restricted down to 1hr dayroom, when the plaintiff made an appearance before the behavior committee on 10/19/2019 and on this day defendant Curtis Parsons told plaintiff that the Security Director James McCurry had restricted his dayroom down to 1hr out because he was a risk, this was his percieved justification for punishing the plaintiff with more "atypical and significant" Hard Ship. Plaintiff asked defendant Parsons how was he more of a risk when waste chains was placed on him wherever he goes and he can't go anywhere unless he put the waste chains on and an sta sits in the dayroom with plaintiff during his dayroom time? The defendant Parson refused to answer the question. During the entire 2½ months that the plaintiff has been in prolonged isolation in solitary confinement. Staff have continuously harrassed and provoked situations in order to write plaintiff up reports (many reports) have been falsified to justify keeping plaintiff in isolation many of these reports plaintiff wasn't given a notice for or an opportunity to present witnesses

15 of 32

34). On 11/13/2019 further "atypical and significant hardship occured when defendant Gregg Scott restricted

required to stay in the cell 24hrs a day every day without a shower, yard, phone calls to family until 11/15/2019 when plaintiff didn't do anything to warrant this restriction.

35). On 11/20/2019 plaintiff was written a false disciplinary ticket by Sta I defendant Camerer who falsly accused the plaintiff of threatening him, this false disciplinary report was written for no other reason other than racial bias, retaliation for past lawsuits & grievances against defendant Sta I camerer who is hostile about the plaintiff exercising his first amendment right to redress the government for grievance. This false report caused the plaintiff to be restricted to the cell 24hrs a day from 11/20/2019 until 12/6/2019, during this period plaintiff was only allowed to shower twice and recieved no other rights or privileges or humane treatment, further subjecting plaintiff to "Atypical and significant hardship". Where the totality of conditions (physical, social and environmental) so clearly exceed any norm, then those conditions meet the "atypical and significant hardship" test of Sandin -v- Connor, 515 U.S. 472, 483-484 (1995). Wilkinson -v- Austin, 545 U.S. 209, 223-224 (2005). Defendant in this case is only making an example of plaintiff.

Pg. 16 of 32

36). Plaintiff contends that the defendant(s) in this cases primary purpose is to impose conditions of confinement on him that are so harsh, that the mere threat of this inhumane treatment will compel other residents at Rushville TDF to comply with the rules to avoid the same prolonged isolation in solitary confinement, known as special management and its extreme conditions, and the defendant(s) should not be heard to argue that such conditions have neither such purpose nor effect, as defendant(s) are well aware that plaintiff was sent here for the purpose of treatment, not inhumane treatment and punishment.

## VI. Plaintiff's Conditions In Prolonged Isolation In Solitary Confinement Known As Special Management Are Indistinguishable From Those At The former TAMMS Supermax Prison

(A). Conditions At former Tamms Supermax Prison
   See; Westefer-v-Snyder. No. 00-162-GPM

37). Indefinate duration of stay; for an inmate serving natural life sentence, there was no indication of how long he would be incarcerated at Tamms (Ill. Admin. Code Title 20, §505.70).

38). Tamms is Illinois' highest security level prison and is located approximately 360 miles from Chicago in Alexander County, in the town of Tamms.

39). Most inmates were required to stay in their cell between 23 and 24 hours a day.

40). Only inmates who reached a certain behavioral level in administrative detention status were allowed the use of a television or radio.

41). Cell doors are constructed of a steel mesh with a food slot which is locked from the outside.

42). Inmate couldn't see each other while in their cells.

43). Inmates did not leave their cells for meals. Rather, their meals were served on plastic trays which were slid through the food slot into the cell.

44). Inmates are single celled and did not visit with other inmates.

45). Inmates were not allowed to leave their cells for communal religious services, educational programs, or jobs; none of which existed at Tamms.   Doc 18 A2.37

46). Whenever an inmate left his cell for any purpose (except exercise and shower) and each time he returned, he had to submit to a very personal search of his body. The inmate was shackled hand and foot, with waste chains, and surrounded by two or three guards who placed their arm on the inmates chest and shoulders.

47). On some days, inmates were allowed out of their cells for an hour to exercise and shower. Inmates who were in the most restricted categories were permitted one hour of yard and one shower per week. Inmates who were in the least restricted category were permitted seven hours of yard and five showers per week.

48). Exercise took place in a concrete "yard", about 15 by 30 feet, that is located at the end of each pod. The yard is completely empty; it contains no recreation equipment, no drinking fountain, and no toilet. The walls are solid concrete, and a stainless plate cover two-thirds of the yard; the remaining one third is steel mesh. Some inmates may have went weeks without leaving their cells to exercise cause their privileges have been revoked, just like the plaintiff Jermaine Carpenter has experienced.

pg. 19 of 36

49). Inmates visits were non-contact and a Lexan window seperates the inmate and visitor. All communication between the inmate and the visitor was through an intercom system that only allowed one person to talk at a time. Those conversations may have been monitored. The inmate was "restrained" during the visit. Absent emergencies, non-attorney visits were arranged two weeks in advance for a specific time, this was mandatory. If a visitor arrived 20 minutes late for a scheduled visit, the visitor was denied the visit with the inmate.

50). Inmate telephone calls were prohibited except for legal calls and emergencies. Inmates were not permitted to initiate calls to their attorneys.

51). While Illinois does not have parole for any prisoner sentenced after 1978, former inmates at Tamms were not eligible for an award of meritorious goodtime.

52). former conditions at Tamms Supermax prison were more restrictive than any other form of incarceration in Illinois. (Westefer, 422 f. 3d at 573).

(B). Plaintiff's conditions In Prolonged Isolation in Solitary Confinement known as Special management:

53). Indefinate duration of stay; Plaintiff has been ordered to the custody of DHS as of 8/16/13 for control, care and treatment until such time as he ~~Is~~ no longer a sexually violent person 725 ILCS 207/40

54). Special management status is the lowest level status in the entire behavior management system see; resident rule book pg. 4 of 79 through 8 of 79

55). Plaintiff has stayed in his cell 21, 22, 23, and 24 hrs a day and is presently restricted to 1hr per day day room time. (Evidence to be seen in discovery.)

56). Plaintiff wasn't given his electronics and other property that wasn't lost, destroyed or sent home until July 2018. (shakedown slip).

57). The first five months on special management status, the plaintiff was in a suicide cell with no electrical out-lets from January 26, 2018 through July 2018 that has a camera in the cell, and a medical curtain placed in front of the door to isolate an humiliate Plaintiff, sta's also covered the window with paper ~~Damaged~~ to stop him from seeing out.

58). Cell doors are constructed of flat steel with a food slot which can be locked from outside, the door also has a small window. (Plaintiff describing door of cell of fox 2-RM-5) where he was moved to when he was moved out of suicide cell.

59). After about a month of being on fox 2-RM-5, all of the residents were moved off of the wing in an attempt to leave the plaintiff on the wing by himself to prevent him from communicating with other residents. One resident who needed a handicap accessible cell refused to move.

60). During plaintiff's dayroom time staff prevented him from talking to other residents. Also also made plaintiff drive in a seperate van on Cook County writs an put him in bullpen by himself.

61). Plaintiff do not leave cell for meals, Rather, his meal is brought to him and served in kosher trays which are slid through the food slot in the cell door.

62). Plaintiff is in a single cell and do not visit with other residents. Most resident on SM status are require to stay in the cell 24 hrs. Pg. 22 of 32 a day

63). Plaintiff do not leave the cell for communal religious services, educational programs, or jobs; none of which exist in solitary confinement, known as special managment status.

64). In solitary confinement known as special management status plaintiff is entitled as a right to 1hr yard a week according to Il. Admin. code 299.700(i), but consistency in giving the plaintiff his 1 hr exercise hasn't been ongoing.

65). Plaintiff has not had contact with a primary therapist every week as required by 59 Il Admin. code 299.700(g).

66). Plaintiff has been denied the right to have religious books approved to be sent to him through x-mas or summer package.

67). During the plaintiff's dayroom time he is in waist chains for an hour, when staff come to get him for his dayroom time its usually (2) staff and one put their hand in between plaintiff's back and the waist chain to try to give the perception that plaintiff is a threat, the staffs also sit in the dayroom with plaintiff while doing his dayroom time in to stop him from talking to other inmates.

68). Because plaintiff only recieve one hour day room time he is required to choose whether he want to go to yard for exercise or clayroom or if he want to do 30 min. yard & 30 min. clayroom.

69). Exercise takes place in a concrete yard with a fence, thats about 8 by 41 feet, located next to the clayroom. The yard is completely empty; it contains no recreation equipment, no drinking fountain, an no toilet, only a table. Plaintiff has went months and weeks without leaving the cell to exercise mostly his yard privileges have not been given to him on a consistent basis.

70). Plaintiff has not been allowed to go to group to progress in treatment in order to meet the requirements of period re-examination in order to qualify for conditional release pursuant to 725 ILCS 207/55.

71). Conditions of solitary confinement on what is known as special management status is more restrictive than the former Conditions in Tamms super max prison or any other form of incarceration in the State of Illinois. (Westefer, 422 f.3d at 573). As most residents on special management status are require/or restricted to the cell 23 hrs a day.

pg. 24 of 32

## VII. Exhaustion of Legal Remedies

72). Plaintiff Jermaine J. Carpenter used the available grievance procedure to try to resolve the matters relevant to this complaint and did not recieve any favorable decisions. All of the grievances and attempt to Resolves written from January 26, 2018 to present may be requested by the defendant during discovery process.

## VIII. Counts 1 -

Based on the allegations in the complaint, the plaintiff finds it would be convienient to divide his pro-se action into the following counts:

Count 1: That All of the defendant(s) violated his rights as a civilly committed sex offender who's entitled, as a matter of due process, to the exercise of proffessional judgment as to his needs as a resident. 14th amen.

Count 2: That All of the defendant(s) are state and local officials who violated the plaintiff rights and is being sued "under the color of State Law" Monroe-v-Pape, 365 U.S. 167 (1961).

count 3:   That all of the named defendant(s)
caused the plaintiff intentional inflation
of emotional distress by subjecting the
plaintiff to unconstitutional conditions
of confinement in prolonged isolation or
participated in the cause of plaintiff's
severe emotional distress directly or
indirectly.

count 4:   That all defendant(s) are aware that the
plaintiff was being held for reasons other
than punishment and constitutionally
entitled to be treated humanely and to
the exercise of profession judgment an
disregarded his rights under Youngberg
-V- ROMEO, 457 U.S. 307, 321 (1982)

count 5:   That all defendant(s) violated the plaintiff's
rights as a committed person who is
entitled to " humane conditions." " and
the provision of " adequate food, clothing,
shelter, and medical care")" Quoting
Farmer-V-Brennan, 511 U.S. 825, 832 (1994).

Count 6: That all of the defendant(s) violated the plaintiff rights as a pre-trial detainee facing criminal Charges and held for reasons other than punishment; see Bell-v-Wolfish, 441 U.S. 520, 539-40 99 s. ct. 1861, 60 L.Ed 2d 447 (1979).

Count 7: That Stair camerer, as a defendant violated the plaintiff's first amendment right by retaliating against him by writing a false disciplinary ticket because he is hostile against plaintiff for filing grievances and a lawsuit against him. first amend right violation

Count 8: That defendant Ajay Jetwani violated plaintiff's due process rights by given him psychotropic medication against his will and without assesing plaintiff to determine his present mental state of mind an whether he was at immediate risk of doing harm to himself or others. Defendant Jetwani prescribed the forced shot, even though he knew plaintiff had explicitly, an unequivocally, refused the drug. This is a violation of the Plaintiffs 14th Amen right

count 9:    That defendant Ajay Jetwani violated
the plaintiff's substantive due process
right to refuse psychotropic medication,
He also violated plaintiff's procedural
due process rights by failing to follow
the required procedures for prescribing
involuntary medication. And committed
a battery under Illinois law and
Intentional infliction of emotional distress,
when he ordered the plaintiff to be
involuntarily medicated. 14th amend.

count 10    Defendant(s) on the Behavior Committee, as
well as defendant Scott, Kunkell, and
McCurry Subjected the plaintiff to
racial discrimination when they treated
a caucasian former resident who was
facing criminal charges in a more
humane manner than they have treat-
ed plaintiff which is unconstitutional
under the Equal Protection Clause Clause
of the 14th amendment. Washington-v-Lee,
263 F. Supp. 327 (M.D. Ala. 1966). The rule as
in relates to plaintiff on special management
has had the effect of discriminating against
him and discriminary purpose an intent is
at least part of the reason for the rule related to plaintiff

Count 11:   Plaintiff contends that the defendant(s) who are and were Behavior Committee members at all times relevant to this complaint violated the plaintiff rights when they failed to follow their own regulations in disciplinary proceedings as required by law. 14th amend Right violation, See; Clayton-El-V-Lane, 203 Ill. App. 3d 895, 149 [148, Ill.Dec. 877, 561 N.E.2d 1834 (1990).

Count 12:   Plaintiff contends that all of the defendant(s) who are behavior committee members have violated the plaintiff's constitutional rights either directly or indirectly by subjecting the plaintiff to inhumane condition. And have been made aware that plaintiff's prolonged isolation in solitary Confinement impose "Atypical and significant hardship" in relation to the ordinary incidents of prison life." Sandin-V-Connor, 515 U.S. 472 483-484 (1995); Wilkinson-V-Austin, 545 U.S. 209, 223-224 (2005). 14th amend.

Pg. 29 of 32

Count 13:   Defendant(s) have violated the plaintiff's right to liberty interest in remaining free from unreasonable restraint. (See; Youngberg-V-Romeo, 457 U.S. 307, 316 (1982)

# IX. Legal Claims

73). Plaintiff realleges and incorporate by reference paragraphs 1-72 as well as counts 1-13.

74). The defendant(s) have violated the plaintiff's, Jermaine J. Carpenter's, rights and constituted a first amendment, and fourteenth amendment to the United States constitution and an Intentional "Infliction of emotional distress" (IIED) See; Schmidt-v-Odell, 64 f.supp. 2d 1014 (D. Kan. 1999),

75). The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been, and will continue to be irreparably injured by the conduct of the defendant(s) unless this court grants declaratory and injunctive relief which plaintiff seeks.

# X. Prayer for Relief

WHEREFORE, plaintiff respectfully prays that this honorable court enter, judgment granting plaintiff:

76). A declaration that the acts and omissions described herein violated the plaintiff's rights under the constitution and laws of the United States.

Pg. 30 of 32

77). A preliminary and permanent injunction ordering that the 22½ months/ongoing prolonged isolation in solitary confinement known as special management condition are unconstitutional because they are identical and indistinguishable from the those at the former Tamms Correctional Supermax Prison.

78). Plaintiff has a fourteenth Amendment Procedural due process rights and liberty interest in avoiding prolonged isolation in solitary confinement known as special management, and that the procedures employed by TDF defendant(s) to safeguard that interest are inadequate.

79). whether plaintiff has a liberty interest in avoiding assignment to prolonged isolation in solitary confinement known as special management, if so what procedures are constitutionally required to safeguard that interest. see westefer-V-Snyder, 422 f. 3d, 570, 589-96 (7th cir, 2005)

80). compensatory damages in the amount of $25,000 against each defendant.

81). Punitive damages in the amount of $ 100,000 against each defendant.

Pg. 31 of 32

82). A jury trial on all issues triable by jury.

83). Plaintiff's costs in this suit.

84). Any additional relief this court deems just, proper, and equitable.

Date: December 11, 2019

Respectfully Submitted,

Jermaine D. Carpenter
17019 County Farm Rd.
Rushville, Illinois 62681

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of purjury that the foregoing is true and correct.

Executed at Rushville, Illinois on 12/11/19

Jermaine D. Carpenter

PG. 32 Of 32

<u>Behavior Committee Statement for</u>
<u>Every Behavior Committee Appearance</u>
<u>After July 29, 2019's Hearing</u>

I've been on special Management Status for the last (18) months since January 30, 2018 and ever since I've been on their I have not been treated humanely, and I am asking to be treated humanely. As a result of this inhumane treatment And prolonged isolation in solitary Confinement I am being affected psychologically and its not am accomodation to my alleged mental disorder. Because of this prolonged isolation in Solitary Confinement (sm status) I am experiencing severe anxiety, deep depression, hallucination, disorientation, sleep difficulty, memory loss amongst other things. With that being said I have a liberty interest protected by the fourteenth amendment due process in avoiding being continuously assigned to (sm status) as a punishment because of personal bias and I would like to be assigned to another status and treated humanely and be allowed to go to group. Thank you!

Respectfully Jermaine Carpenter

On this 12th month and 11th day of 2019, plaintiff's Prolonged Isolation in Solitary confinement continues.

Exhibit # B

criminal or other charges. While on Temporary Special Management Status, you might be in a room by yourself.

You may be placed on Temporary Special Management until your Behavior Committee Meeting. If you are placed on Temporary Special Management Status, your Behavior Committee Meeting will be scheduled within 48 hours (excluding State holidays and weekends) of the time that you are placed on this status.

Within one hour of being placed on Temporary Special Management Status, you will be assessed (checked) by Mental Health Staff or a nurse. This assessment is to determine if you have any mental health needs. Then, Security and the Treatment Team will decide if you should get a small supply of hygiene items. While on Temporary Special Management Status, you will be contacted by your Treatment Team on a regular basis.

After your Behavior Committee Meeting, you may be moved from Temporary Special Management Status to Special Management Status or you may go straight to Close Status.

Note: Temporary Special Management and Special Management Status are basically the same status. Temporary Special Management Status is the status you may be placed on before your Behavior Committee Meeting. Then, after your Behavior Committee Meeting, if you are still a risk to yourself or others, you may be placed on Special Management Status.

### Special Management Status
If you are placed on Special Management Status, then the incident, your behavior, and your safety are reviewed every 48 hours (State holidays or weekends are not included). When the Behavior Committee feels there is not a risk that you might hurt someone else or yourself, you may be put on another status. While on Special Management Status, you will be contacted by your Treatment Team on a regular basis.

While you are on Special Management Status, your rights and privileges are in Title 59, part 299 (see Appendix C-1). These rights include the right to basic care items and reading materials. If the Program Director allows, you may order from Commissary, have visitors and continue with treatment. You will be let out of your room at least one hour each day. Some of this time may be outdoors. You will still receive your legal phone calls (if any). However, visits must be approved by the Program Director.

While on Special Management Status (this includes Temporary Special Management Status), you need to:
1. Cooperate with rules and mental health reviews.
2. Stay calm and non-threatening.
3. Accept direction.
4. Keep your room clean.
5. Keep yourself clean.
6. Follow all rules.
7. Follow meal rules.

Exhibit 1

## Affidavit

I, Jermaine J. Carpenter, deposes and sais that as to the petition herein, (he)/she is the plaintiff in the above entitled cause; that (he)/she has read the foregoing document, by (his)/her signature, and that the statements contained there in are true in substance and in fact.

/s/

Jermaine J. Carpenter
Plaintiff, Pro-se

County of Schuyler )
)ss.
State of Illinois )

Sign And Sworn To before me this 6th day of
Dec 20 19 , by Jermaine Carpenter

Misty D Nieman
Notary Public

OFFICIAL SEAL
MISTY D NIEMAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 12/07/22

FORM 12 Circuit Court Summons

Byers Printing Company, Springfield, IL

IN THE CIRCUIT COURT OF THE _Eighth 8th_ JUDICIAL CIRCUIT

_Schuyler_ COUNTY, ILLINOIS

Jermaine D Carpenter,
Plaintiff,

v.

J.B. Pritzker, et al.,
Defendant(s)

RECEIVED
JUN 25 2020
SCHUYLER COUNTY SHERIFF

NO. _2014-L-6_

### SUMMONS

To the defendant: _Shan Jumper 1409 County Farm Rd, Rushville IL 62681_

YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance,

in the office of the clerk of this court _102 S. Congress St, Suite 103, Rushville IL 62681_,

(Insert name of building, room number, address, including city)

Illinois, within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the officer:

This summons must be returned by the officer or other persons to whom it was given for service, with indorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed. This summons may not be served later than 30 days after its date.

WITNESS _June 25_, 20 _20_.

(Seal of court)

_Elaine A Boyd_
Clerk of court

_Jenn Means_
Associate Circuit Clerk-Deputy

Name
Attorney for
Address
City
Telephone

Date of service: _____, 20 ___.
(To be inserted by officer on copy left with defendant or other person)